NYIA SALLEE,
1620 N. 17th St.
Milwaukee, WI 53205,

        Plaintiff,

                                          Case No.: 26-CV-492

        v.

MILWAUKEE AREA TECHNICAL COLLEGE
700 W. State Street
Milwaukee, WI 53233

        Defendant.

## COMPLAINT

The Americans with Disabilities Act was designed for workers exactly like Plaintiff Nyia Sallee. Ms. Sallee has a tragic, debilitating, and uncurable disability. She has small fiber neuropathy, which causes her fingers and toes to twist, burn, go numb, and spasm uncontrollably. Her back and legs do not twist, but they burn, go numb, and spasm uncontrollably. She suffers nerve pain all over her body and falls unpredictably.

Fortunately, she has a job that can be done at home. She works as a College Advisor for students at Defendant Milwaukee Area Technical College ("MATC"), and from 2020 through 2024, she received a reasonable accommodation to work remotely. During that time she received awards and positive feedback. Unfortunately, in January 2025, MATC rashly decided that all student advisors must work in-person,

and they denied Ms. Sallee's fifth annual request for an accommodation. They did not assess her request. And they did not engage her in the interactive process. So, for over a year now, Ms. Sallee has been forced to take leave, without pay.

Ms. Sallee brings this under the Americans with Disabilities Act ("ADA") to remedy MATC's unlawful employment practices because of her disability and bring her relief. MATC violated the ADA by failing to accommodate Ms. Sallee's disability and failing to engage in the interactive process regarding her accommodation request.

### JURISDICTION & VENUE

1. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the ADA and Title VII.

2. This action is authorized and instituted under Section 107(a) of the ADA, which incorporate by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and 29 U.S.C. § 2617(a)(2).

3. MATC's unlawful employment practices relevant to this action occurred in the jurisdiction of the United States District Court for the Eastern District of Wisconsin.

4. This Court has general personal jurisdiction over MATC because it is an educational institution operating and headquartered in Milwaukee, Wisconsin.

5. Venue is proper because MATC is headquartered in Milwaukee, Wisconsin, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

6. Plaintiff Ms. Sallee is an employee of MATC.

7. At all relevant times, Defendant MATC has been a public vocational-technical and community college based in Milwaukee, Wisconsin.

8. At all relevant times, MATC has been an employer continuously engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

9. All conditions precedent to the institution of this action have been fulfilled.

10. Over thirty days prior to the filing of this action, Plaintiff Ms. Sallee filed a charge with the Equal Employment Opportunity Commission alleging that Defendant MATC violated the ADA and Title VII.

11. On January 22, 2026, the EEOC issued Ms. Sallee a Dismissal and Notice of Rights regarding her claims under the ADA.

## FACTS

*Ms. Sallee & Her Work at MATC 2012-2024*

12. Nyia Sallee is a wife, a mother of six, and a full-time employee of MATC.

13. Ms. Sallee began working at MATC in 2012.

14. Around 2018, toes on one of Ms. Sallee's foot began to twist, involuntarily.

15. Initially, doctors thought Ms. Sallee had a Vitamin D deficiency, and treated her with Vitamin D.

Case 2:26-cv-00492-PP    Filed 03/25/26    Page 3 of 12    Document 1

16. However, her symptoms grew worse and more frequent. Toes on her other foot began to twist, and then her fingers.

17. In 2021, she received a diagnosis of small fiber neuropathy. Her symptoms have only worsened since then.

18. Small fiber neuropathy causes numbness, tingling, pain, and muscle spasms. Ms. Sallee's fingers and toes twist, burn, twitch, go numb, and jerk with uncontrollable spasms. Her back, arms, and legs burn, jerk, twitch, spasm, and go numb. All of this causes severe instability and weakness. She is at high risk of falling and bleeding because of her condition.

19. She usually experiences excessive bleeding and bruising if she gets hurt. She used to experience excessive bleeding of the skin, prompted only by dry skin that cracked.

20. She has difficulty walking and caring for herself.

21. In 2020, Ms. Sallee, along with most MATC employees, started working from home to avoid the risk of exposure to COVID-19.

22. After working remotely for a while, she tried to return to work in-person at MATC but found that her disability had progressed so much that she could no longer work safely in-person.

23. Nevertheless, in 2021, she was promoted to the role of College Advisor, counseling students.

24. Since then, she has worked from home full-time to accommodate her disability.

25. From 2021 through 2025, she has renewed her accommodation request to work from home.

26. During the four years Ms. Sallee worked from home as a College Advisor, she accomplished all essential job duties. Much of her work is administrative and can be done on a computer and phone. Much of her work involves talking with students, which she does via Zoom or phone. Many of the students that Ms. Sallee advises prefer Zoom meetings over in-person meetings for convenience.

27. Since working remotely, Ms. Sallee has consistently received positive feedback for her performance. She was continually nominated for We Care Excellence awards.

28. Nothing has changed about her job description or essential duties since she first started working from home.

*MATC's Refusal to Accommodate*

29. However, on January 8, 2025, MATC denied her request for the first time—effective immediately, with no advance notice.

30. At no point prior to that denial had MATC communicated that she would need to work in-person at some point in the future.

31. MATC did not provide any assessment of Ms. Sallee's request. They did not claim that they would suffer an undue burden if she continued to work from home, let alone describe that burden. They did not suggest other accommodations. They did not ask follow-up questions.

32. The next day, January 9, 2025, Ms. Sallee was forced to take leave because she cannot safely work in-person. She has been on leave ever since.

33. Ms. Sallee tried repeatedly to engage MATC in the interactive process and MATC repeatedly failed to engage in good faith.

34. At the end of January, Ms. Sallee met Bianca Standa by videoconference, and Ms. Standa confirmed that nothing had changed about Ms. Sallee's job duties. She said that MATC simply wants all advisors to work in-person, and that is why MATC denied her accommodation request.

35. Ms. Standa said that MATC wants someone in the physical office for walk-in appointments, which cannot be performed remotely.

36. She did not provide an individualized assessment of Ms. Sallee's accommodation request. And she did not offer Ms. Sallee any other accommodations for her disability, such as a transfer to a position that could be fully remote.

37. Ms. Sallee followed up by email several times. She offered to take over the "Zoom Room" and manage more remote meetings than advisors who worked in-person. She offered to take over other administrative duties. She asked what other accommodations MATC proposed.

38. But MATC only regurgitated the same line: all advisors now need to work in-person.

39. MATC employs many people who work remotely full-time in various positions.

40.     Ms. Sallee would have been willing to take a different, fully-remote, position with MATC.

41.     MATC never offered her that option.

42.     Repeatedly, Ms. Sallee's Counsel contacted MATC and tried to engage them in the interactive process. But MATC has still not engaged.

43.     Ms. Sallee is still classified as an employee of MATC but does not receive regular income or contributions to her 403B.

44.     Since January 2025, she has received pay for MATC closures only.

*Financial & Emotional Distress*

45.     Ms. Sallee has now fallen behind on her mortgage, car note, phone service, water bill, physician bills, coach training payments, school payments for herself, and payments to her daughter's childcare.

46.     In the past year, her electricity and gas were disconnected for the first time in 25 years of living on her own, and one of her immediate family members relies on electricity for their apnea monitor. At times, her family has had to live without hot water, heat, air-conditioning, and lights.

47.     She struggles to purchase necessities like tissue, soap, garbage bags, laundry detergent, cleaning supplies, and most of all food. She has had to utilize food pantries and other sources for food.

48.     Over $4,000 of her medical bills have been sent to collections.

49.     She has had to discontinue medical treatments for acupuncture, which had been very effective at managing her symptoms.

50. She could not pay the rent for the church that she and her husband started in 2020 and they had to shut it down entirely in September 2025.

51. She decided to go back to school last Fall to earn her bachelor's degree, and she was approved for financial aid, but she could not start because she could not pay the $200 enrollment fee.

52. The financial stress has caused significant emotional strain. She is currently under the care of a therapist and primary care physician to assist her with medications and treatment for pain and anxiety.

53. The financial stress has also caused physical symptoms: increased falls, muscle spasms, and pain. It has impaired her sleep and mobility.

## COUNT I

### FAILURE TO ACCOMMODATE & FORCED LEAVE
### AMERICANS WITH DISABILITIES ACT

54. Ms. Sallee incorporates all other paragraphs by reference.

55. Since January 2025, MATC has engaged in employment practices that violate the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

56. At all times relevant, Nyia Sallee was a qualified individual under the ADA, 42 U.S.C. § 12111(8), because she was an employee who, with a reasonable accommodation, could perform the essential functions of her job as a College Advisor.

57. MATC knew that Ms. Sallee had small fiber neuropathy, a disability.

58. Despite her disability, Ms. Sallee was able to perform the essential functions of her position with a reasonable accommodation.

59. Ms. Sallee requested that MATC allow her to work from home, as an accommodation for her disability.

60. Working from home would have effectively eliminated the risk of falling that small fiber neuropathy causes Ms. Sallee, effectively ensuring the safety of Ms. Sallee and those around her.

61. MATC could have accommodated Ms. Sallee's disability without enduring an undue hardship.

62. Nevertheless, MATC refused to do so.

63. MATC also refused to engage in the interactive process with Ms. Sallee to explore other possible accommodations.

64. Defendant's denial of Ms. Sallee's request and failure to engage in the interactive process to explore other possible accommodations, constituted forced leave, in violation of.

65. Because MATC refused to accommodate Ms. Sallee and refused to engage in the interactive process, Ms. Sallee took unpaid leave. That leave constituted a forced accommodation, in violation of the ADA, 42 U.S.C. § 12112(b)(5)(A).

66. The effect of these practices has been to deprive Ms. Sallee of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

67. MATC acted with malice or reckless indifference to Ms. Sallee's federally protected rights.

68. Ms. Sallee has suffered damages because of MATC's conduct, including but not limited to lost earnings and benefits, emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, and other actual pecuniary and non-pecuniary damages.

### RELIEF SOUGHT

Ms. Sallee respectfully requests that this Court do the following:

A. Grant a permanent injunction enjoining MATC its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from denying reasonable accommodations to known limitations of qualified employees related to disability.

B. Grant a permanent injunction enjoining MATC its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from failing to engage in the interactive process to evaluate accommodation requests related to disability.

C. Grant a permanent injunction enjoining MATC its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from taking adverse action in terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations of the employee related to disability.

D. Grant a permanent injunction enjoining MATC its officers, agents, servants, employees, attorneys, and all persons in active concert or participation

Case 2:26-cv-00492-PP    Filed 03/25/26    Page 10 of 12    Document 1

with it, from interfering with employees' exercise of their rights under the Americans with Disabilities Act.

E.     Order MATC to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees with disabilities, which eradicate the effects of its past and present unlawful employment practices.

F.     Order MATC to make Ms. Sallee whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to training requirements, notice posting, and policy revisions.

G.     Order MATC to make Ms. Sallee whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the preceding paragraphs, including but not limited to debt incurred to pay living expenses, in amounts to be determined at trial.

H.     Grant such further relief as the Court deems necessary and proper in the public interest.

I.     Award Plaintiff's Counsel its costs and reasonable attorneys' fees of this action.

JURY DEMAND

Ms. Sallee demands a trial by jury.

Respectfully submitted this 25th day of March 2026.

By: s/ Christine A. Donahoe
Christine A. Donahoe
Wisconsin Bar No. 1092282
Summer H. Murshid
Wisconsin Bar No. 1075404

HAWKS QUINDEL, SC
5150 N. Port Washington Rd., Ste 243
Milwaukee, WI 53217
Tel: (414) 271-4453
Fax: (414) 207-6079
cdonahoe@hq-law.com
smurshid@hq-law.com

*Attorneys for Plaintiff Nyia Sallee*